AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

**United States of America**

**v.**

**THOMAS J. LOEWKE,**

*Defendant*

Case No. 23-MJ-4007

## CRIMINAL COMPLAINT

I, Adam P. Tyrna, Special Agent, Homeland Security Investigations, the complainant in this case, state that the following is true to the best of my knowledge and belief:

Beginning on or before December 17, 2020, through and including on or about January 2, 2021, in the Western District of New York, the defendant **THOMAS J. LOEWKE** violated and attempted to violate 18 U.S.C. §§ 1511 and 1512(c)(2), offenses described as follows:

The defendant, who at all times relevant to the complaint was an employee of New York State, that is a Sergeant with the New York State Troopers, and his co-conspirators, who at all times relevant to the complaint conducted, financed, managed, supervised, directed, and owned an illegal gambling business, that is an illegal online sports betting business, agreed to obstruct the enforcement of the criminal laws of the State of New York, and the defendant knowingly and willfully participated in this unlawful plan with the intent to facilitate the ongoing operation of his co-conspirators' illegal gambling business, and, in furtherance of that conspiracy, the defendant and his co-conspirators knowingly committed at least one overt act to effect the object of the conspiracy, that is the defendant disclosed to his co-conspirators confidential information regarding an ongoing federal, state, and local investigation into the co-conspirators' illegal gambling business,

All in violation of Title 18, United States Code, Section 1511, and:

The defendant knowingly and corruptly obstructed, influenced, and impeded and attempted to obstruct, influence, and impede an official proceeding, that is a federal grand jury investigation,

All in violation of Title 18, United States Code, Section 1512(c)(2).

This Criminal Complaint is based on these facts:

**SEE ATTACHED AFFIDAVIT OF ADAM P. TYRNA, SA, HSI**

☒  Continued on the attached sheet.

_____
*Complainant's signature*

Adam P. Tyrna, SA, HSI
_____
*Printed name and title*

Application submitted by email/pdf and attested to me and before me as true and accurate by telephone consistent with Fed.R.Crim.P. 4.1 and 41(d)(3).

Date:  _____January 6 , 2023_____

_____
*Judge's signature*

City and State:  Rochester, New York

HON. MARIAN W. PAYSON, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK    )
COUNTY OF MONROE   )        SS:
CITY OF ROCHESTER   )

I, **ADAM P. TYRNA,** being duly sworn, depose and state:

1.      I am a special agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI").  I have been employed by HSI as a Special Agent since 2009.  I am currently assigned to the HSI Buffalo Nickel City Financial Task Force in Buffalo, New York.  As part of my daily duties as a special agent with HSI, I investigate crimes involving violations of federal law.

2.      As part of my employment with HSI, I successfully completed the Federal Law Enforcement Training Center Criminal Investigator Training Program and U.S. Immigration and Customs Enforcement Special Agent Training, both of which included intensive instruction in the application for and execution of search and arrest warrants, as well as the application for criminal complaints, and other legal process.  Prior to my employment with HSI, I worked as an officer with U.S. Customs and Border Protection ("CBP").

3.      The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers, and the review of documents and records.

4.      This affidavit is being submitted in support of a criminal complaint charging Thomas J. LOEWKE with Obstruction of an Official Proceeding, in violation of Title 18, United States Code, Section 1512(c)(2) and Obstruction of a State or Local Law Enforcement

Investigation, in violation of Title 18, United States Code, Section 1511 (hereinafter, collectively the "TARGET OFFENSES").

5.      In sum, there is probable cause to believe that LOEWKE, who at all times relevant to the complaint was a New York State Police Sergeant, obtained information regarding a joint federal, state, and local-agency investigation of TARGET 1.  TARGET 1 owned and operated illegal gambling businesses in the Western District of New York. LOEWKE knew of TARGET 1's illegal gambling businesses and intentionally and unlawfully shared information about the investigation with TARGET 1 in order to obstruct the investigation and facilitate TARGET 1's continued operation of his illegal gambling businesses.

6.      Since this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause to believe that LOEWKE committed and attempted to commit the TARGET OFFENSES.

## PROBABLE CAUSE

### TARGET 1's Illegal Gambling Business and the Investigation

7.      In or around October of 2020, HSI entered a joint federal grand jury and state and local law enforcement investigation (hereinafter the "Investigation") with the United States Attorney's Office for the Western District of New York, Internal Revenue Service, New York State Police, Greece Police Department, and Rochester Police Department into

TARGET 1 and others for their ownership and operation of illegal gambling businesses, in violation of federal and New York State laws.

8.      One of the illegal gambling businesses that TARGET 1 owned and operated was an illegal bookmaking operation.  TARGET 1 managed his book through the website sport700.com.  TARGET 1 had a username and password for the website.  He also gave usernames and passwords to sub-agents and individual bettors that TARGET 1 managed through the website.

9.      TARGET 2 was the administrator of the website and assisted TARGET 1 in creating accounts, usernames, and passwords for TARGET 1 and the sub-agents and individual bettors that TARGET 1 controlled.  TARGET 2 also managed his own book of sub-agents and individual bettors using the website sport700.com.

10.     TARGET 3 AND TARGET 5 were sub-agents who managed sheets under TARGET 1 through the website sport700.com.

11.     TARGET 4 was an employee at TARGET 3's pawn shop who collected losses and paid out winnings to TARGET 1's bettors.

12.     It is a violation of New York Penal Law § 225.05 (Promoting Gambling in the Second Degree) to advance or profit from illegal bookmaking.  It is a violation of New York Penal Law § 225.10 (Promoting Gambling in the First Degree) to engage in illegal

bookmaking by receiving or accepting in any one day more than five bets totaling more than five thousand dollars.[1]

13.     Beginning on or about November 17, 2020, New York State Supreme Court Justice Hon. Victoria M. Argento signed a series of *ex-parte* eavesdropping orders for TARGET 1's cellular telephones.

14.     Over the following months, law enforcement intercepted a series of calls and text messages between TARGET 1 and TARGETS 2, 3, 4, and 5, as well as other sub-agents and individual bettors discussing the placement of bets, collection of winnings, and payment of losses.

15.     For example, on or about November 26, 2020, law enforcement intercepted a series of calls between TARGET 1 and TARGET 3, who managed a sub-account under TARGET 1.  During these conversations, TARGET 1 and TARGET 3 discussed whether to accept a new bettor (hereinafter "BETTOR 2"). TARGET 1 and TARET 3 negotiated their relative shares of the bettor's winnings and losses (TARGET 1 decided to take a 20% commission) and the limits they placed on the bettor's maximum bets through the website. Afterwards, TARGET 1 called BETTOR 2 to communicate the agreed upon limits.  Then, law enforcement intercepted a call between TARGET 1 and TARGET 2, during which TARGET 1 asked TARGET 2 to set up an account for BETTOR 2 on the website.  Finally,

---

[1] In-person sports wagering at licensed casinos has been legal in New York since 2019.  *See* N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 1367.  Further, in 2022, mobile sports wagering through certain licensed platforms became legal in the State of New York.  *Id.*  However, unlicensed bookmaking, whether in person or online, has been and remains illegal in the State of New York.

TARGET 1 called TARGET 3 to confirm BETTOR 2 had an account under TARGET 3's sub-page on the website.

16.     On or about December 8, 2020, law enforcement intercepted a series of text messages between TARGET 1 and an undercover officer (hereinafter "BETTOR 1"). BETTOR 1 told TARGET 1 that he had money to pay off a gambling debt.  TARGET 1 instructed BETTOR 1 to go to the pawn shop owned by TARGET 3 and give the money to TARGET 4.  When BETTOR 1 arrived at the pawn shop, TARGET 4 told BETTOR 1 that, if he had something for TARGET 3, "then I'm your guy".  BETTOR 1 took $1,500 out of an envelope and handed it to TARGET 4.  TARGET 4 asked BETTOR 1 how much money it was and who it was for.  BETTOR 1 replied, "1500" and "[TARGET 1]".  BETTOR 1 thanked TARGET 4 and departed the premises.

17.     On or about December 18, 2020, law enforcement intercepted a phone call between TARGET 1 and TARGET 5, who was a sub-agent of TARGET 1.  TARGET 5 explained to TARGET 1 that TARGET 5 placed the wrong bet for a player and asked TARGET 1 to check the website.  TARGET 1 stated he was going to go to his office, pull up the website, and check the bet out.

18.     On or about December 30, 2020, law enforcement intercepted a series of text messages between TARGET 1 and BETTOR 1.  TARGET 1 texted BETTOR 1 informing BETTOR 1 he had money to pay BETTOR 1 for gambling winnings from bets BETTOR 1 placed with TARGET 1.  BETTOR 1 was instructed to return to the pawn shop owned by TARGET 3 and retrieve the money.  Upon arriving at the pawn shop, BETTOR 1 interacted

with TARGET 4.  TARGET 4 made a phone call and then counted out $2,630 and handed it to BETTOR 1.  BETTOR 1 thanked TARGET 4 and departed the premises.

19.     On or about January 2, 2021, New York State Supreme Court Justice Honorable Victoria M. Argento signed a warrant authorizing law enforcement to log into TARGET 1's account on sport700.com using usernames and passwords that, based on intercepted communications, were known to belong to TARGET 1.

20.     On or about January 3, 2021, law enforcement officers executed the search warrant by logging into TARGET 1's account on sport700.com using TARGET 1's username and password.

21.     A review of TARGET 1's account indicated that it was created on or about April 25, 2019.

22.     According to the account records, as of January 3, 2021, TARGET 1 had 16 sub-agents.  Collectively, those 16 sub-agents managed 221 individual bettor accounts.

23.     According to the account records, throughout the lifetime of TARGET 1's account (beginning on April 25, 2019, through January 3, 2021) TARGET 1 generated $1,241,172 in gambling profits.

24.     On or about February 6, 2021, New York State Supreme Court Justice Honorable Victoria M. Argento signed a warrant authorizing law enforcement to log into TARGET 2's account on sport700.com using a username and password that, based on intercepted communications, were known to belong to TARGET 2.

25.    On or about February 8, 2021, law enforcement officers executed the search warrant by logging into TARGET 2's account on sport700.com using TARGET 2's username and password.

26.    According to account records, TARGET 2's account was created on April 25, 2016.   TARGET 2 had 128 sub-agent accounts operating underneath his account. Collectively, these sub-agents managed 1,789 individual bettors.

27.    Throughout the lifetime of TARGET 2's account (beginning on April 25, 2016 through January 3, 2021) TARGET 2's gambling profits totaled $8,945,629.

***TROOPER 1 Discloses the Existence of the Investigation to LOEWKE***

28.    While this Investigation was ongoing, on or about December 17, 2020, a uniform Trooper assigned to the New York State Police Troop E Communications Section (hereinafter "TROOPER 1"), performed computer maintenance on the computer of an NYSP Senior Investigator who was involved in the Investigation.  At that time, a draft affidavit was on the NYSP Senior Investigator's desk, and TARGET 1's name was in plain view at the top of the document.

29.    Access to the Senior Investigator's office was controlled by a swipe card system. According to NYSP's records of door access swipes, TROOPER 1 swiped into the office at the following times:

a.    12/17/2020 8:46 a.m.;

b.    12/17/2020 9:07 a.m.; and

c.    12/17/2020 9:20 a.m.

7

30.     According to a toll analysis of TROOPER 1's cellular phone, on or about December 17, 2020, at 9:06 am (after TROOPER 1 entered the office for the first time that morning and just before he entered it a second time) TROOPER 1 sent an outgoing text message to a cellular phone number registered to LOEWKE.

31.     The toll analysis also showed the following phone calls on that date:

a.      TROOPER 1's cell phone calls LOEWKE's phone at 9:06 a.m. for 59 seconds;

b.      LOEWKE's cell phone calls TROOPER 1's cell phone at 9:16 a.m. for 2 minutes and 5 seconds;

c.      LOEWKE's cell phone calls TROOPER 1's cell phone at 2:07 p.m. for 18 seconds; and

d.      LOEWKE's cell phone calls TROOPER 1's cell phone at 2:48 p.m. for 3 minutes and 8 seconds.

32.     On or about April 1, 2021, a warrant was obtained from New York State Supreme Court Justice Hon. Victoria M. Argento to search TROOPER 1 and LOEWKE's cell phones.

33.     The search uncovered a text message from TROOPER 1 to LOEWKE on December 17, 2020, at 2:15 PM (UTC+0) (i.e., 9:15 AM EST) that said "Call me ASAP."

34.     The search also uncovered evidence from LOEWKE's phone that he engaged in illegal sports betting by placing numerous bets with another individual.

35.     On or about April 6, 2021, TROOPER 1 was interviewed by NYSP to determine if TROOPER 1 had shared confidential information regarding the Investigation with LOEWKE.  TROOPER 1 admitted to being in the NYSP office of the NYSP Senior Investigator referenced in Paragraph 28, above, on or about December 17, 2020, and seeing

paperwork on the NYSP Investigator's desk with the TARGET 1's name on top.  TROOPER 1 said after seeing the paperwork with TARGET 1's name, he left the office and called LOEWKE.  TROOPER 1 and LOEWKE had a conversation about TARGET 1 being investigated for gambling based on the documents TROOPER 1 had observed on the desk. TROOPER 1 knew LOEWKE had a gambling problem and was warning him against gambling with TARGET 1.

***LOEWKE Discloses the Existence of the Investigation to TARGET 1***

36.     On January 2, 2021, the Investigation intercepted a phone call between TARGET 1 and TARGET 2.

37.     In sum and substance, TARGET 1 told TARGET 2 that he was cleaning his wife's truck at his vehicle detailing shop.  Afterwards, TARGET 1 went to his brother's bar, which is located in the same plaza as his vehicle detailing shop.

38.     TARGET 1's Detail Shop was located in Chili Paul Plaza.  TARGET 1's brother operates a pizza bar also located in the Chili Paul Plaza.  According to witnesses, LOEWKE frequents that pizza bar.

39.     TARGET 1 said that, when he entered the bar, he was approached by a person he knew well from the State Police, who asked him to go outside to talk.  Once outside, the person told TARGET 1 that TARGET 1 was being investigated for gambling.

40.     TARGET 1 told TARGET 2 that he believed TARGET 1's main cell phone was "bad" and that he was calling on a "burner."

41.     TARGET 1 discussed with TARGET 2 that, in 2014, he was the target of a wiretap investigation into illegal gambling but was never charged.

42.     TARGET 1 stated that, in 2013 and 2014, his gambling operation was much larger and that he had bettors "in every pocket of the country" and was "FedExing money like it was [his] job."

43.     TARGET 1 stated that his current gambling operation is much smaller and "it would take 3 weeks to crack this case . . .  it would take 3 hours."

44.     TARGET 1 also told TARGET 2 that he had an "after hours joint" but complained that "it failed, to be honest with you, it doesn't even make money."  TARGET 1 explained that the former manager of the illegal gambling location stole $15,000 from the operation.

45.     TARGET 1 and TARGET 2 also discussed how the police utilize wire taps and how often the police must renew them.

46.     That discussion prompted TARGET 1 to ask TARGET 2 to change the password for his account on sport700.com.  TARGET 2 agreed and ultimately changed the password.

47.     TARGET 2 also offered to change the name of the website to make it appear innocuous, for example to "wood500.com".

48.     TARGET 1 also asked TARGET 2 to clear out all his gamblers' balances on the website.

49.     TARGET 1 then complained to TARGET 2 that the Investigation was "dumb" and a "[explitive] waste of time" because "there's hardly any sports on.  They just got started anyway…" and "it's legal in Jersey."   TARGET 1 said, "I get a piece of this and a piece of that, but [expletive] prove it. . . . .  They're using my website.  You know what I'm saying? How the [expletive] do you know that… that the sheet called 'DM1' is giving me anything?" "The guy pays me for a [expletive] service.  That's it."

50.     TARGET 2 advises TARGET 1 to lay low for the foreseeable future and TARGET 1 agrees, saying "Yeah, I gotta lay extra low, and I'm gonna be deliberate on the real phone talking about how legitimate I am…"

51.     Towards the end of the call, TARGET 1 said the person who tipped him off was a member of the State Police named "T.J."

## CONCLUSION

52.     Based on the foregoing, it is respectfully submitted that probable cause exists to believe that Thomas J. LOEWKE obstructed and attempted to obstruct an Official Proceeding, in violation of Title 18, United States Code, Section 1512(c)(2), and a State or Local Law Enforcement Investigation, in violation of Title 18, United States Code, Section 1511.


ADAM P. TYRNA
Special Agent
Homeland Security Investigations


Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this  6th   day of January, 2023.

HON. MARIAN W. PAYSON
United States Magistrate Judge

12