IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

  -v-                                                  23-CR-6080

THOMAS J. LOEWKE,

                    Defendant.
_____

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Assistant United States Attorney, Meghan K. McGuire, respectfully files this response in opposition to the defendant's objections (Dkt. 23) to the Presentence Investigation Report, filed on July 31, 2023 (Dkt. 21) (the "PSR").

## FACTUAL BACKGROUND

On May 17, 2023, the defendant pled guilty to a one-count Information charging him with violating Title 18, United States Code, Section 1511 (Obstruction of a State or Local Law Enforcement Investigation).

The defendant's plea was pursuant to a plea agreement with the government. (Dkt. 19.) In the factual basis of the plea agreement, the defendant admitted that:

    a.      Beginning in or around October 2020 through and including in or around April 2021, in the Western District of New York and elsewhere, the defendant,

        THOMAS J. LOEWKE, did unlawfully combine, conspire, confederate, and agree with Louis P. Ferrari II ("Ferarri") to obstruct the enforcement of the criminal laws of the State of New York, that is, New York Penal Law Section 225.05 (Promoting Gambling in the Second Degree) and New York Penal Law § 225.10 (Promoting Gambling in the First Degree), with intent to facilitate an illegal gambling business.

b.    At all times relevant to the Information, between in or around October 2020 through and including April 2021, the defendant was a New York State Police (NYSP) Sergeant.

c.    Beginning in or around October 2020, the NYSP, together with other local and federal law enforcement agencies, conducted an investigation (the "Investigation") into the illegal gambling activities of FERRARI and others.

d.    The defendant was aware that Ferrari conducted, financed, managed, supervised, directed, and owned an illegal bookmaking operation.

e.    The defendant does not dispute that Ferrari's illegal gambling operation involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or part of the business; remained in substantially continuous operation for a period in excess of thirty days; and had a gross revenue in excess of $2,000 in a single day.

f.    On or about December 17, 2021, the defendant became aware of the Investigation.

g.    On or about December 27, 2021, the defendant disclosed the existence of the Investigation to Ferrari. The defendant intentionally and unlawfully disclosed the existence of the Investigation to Ferrari in order to obstruct the investigation and facilitate Ferrari's continued operation of his illegal gambling business.

h.    On or about January 2, 2021, Ferrari used the information provided by the defendant to attempt to obstruct the Investigation by changing the password of his sports betting website, changing the appearance of the sports betting website, and deleting the history of best placed through his sports betting website.

(Plea Agreement, Dkt. 19, ¶¶ 4(a)-4(h).)

In the plea agreement, the government maintained that the two-level enhancement under Guidelines § 3B1.3 (abuse of a position of trust or special skill) applied to the defendant's offense. (*Id.*, ¶ 7.) The defendant reserved the right to argue against that enhancement. (*Id.*, ¶ 8.)

On July 31, 2023, the United States Probation Office ("USPO") filed a Presentence Investigation Report ("PSR"). (Dkt. 21.) The USPO's Sentencing Guideline Calculation included the two-level enhancement under Guideline § 3B1.3. (PSR, Dkt. 21, ¶ 47.) The USPO applied this guideline because:

> [T]he defendant was employed as a Sergeant for the New York State Police (NYSP). He obtained information regarding an investigation being conducted by the NYSP and tipped off the target of that investigation. The defendant providing protected information led to the target, Ferrari, to delete the betting history, change the passwords, and change the website to conceal the offense.

(*Id.*)

On October 17, 2023, the defendant filed an objection to the PSR's inclusion of the two-level enhancement under Guideline § 3B1.3. (Dkt. 23.)

## DISCUSSION

Guidelines § 3B1.3 provides that:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust,

3

it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).

The defendant argues that the enhancement should not apply because "the underlying charge includes the specific offense characteristic, that being the fact that the Defendant was a New York State Trooper and that he received information, allegedly from another New York State Trooper about this investigation." (Def. Obj., Dkt. 23, p. 1.) This argument is both factually inaccurate and legally irrelevant.

First, the argument is factually inaccurate because the underlying offense does not necessarily include any consideration of the fact that the defendant was in a position of trust. The statute, 18 U.S.C. § 1511, makes it a crime for:

> [T]wo or more persons to conspire to obstruct the enforcement of the criminal laws of a State or political subdivision thereof, with the intent to facilitate an illegal gambling business if--
>
> (1) one or more of such persons does any act to effect the object of such a conspiracy;
>
> (2) one or more of such persons is an official or employee, elected, appointed, or otherwise, of such State or political subdivision; and
>
> (3) one or more of such persons conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business.

The law applies equally to public officials (who are in a position of trust) and those who operate illegal gambling businesses (who are not); either can be found criminally liable. For example, in this case, both the defendant and his co-conspirator Louis P. Ferrari could

be charged with violating the same statute. The defendant was in a position of public trust; Mr. Ferrari was not. But both can be convicted of the same offense. Thus, the underlying criminal charge does not require the defendant to be in a position of trust in order to be convicted.

Second, the argument is factually irrelevant because it does not matter whether the underlying criminal offense mentions a specific characteristic (such as the defendant's position of public trust). All that matters is whether the Guidelines already account for that characteristic in the defendant's sentencing guidelines calculation. And in this case, they do not.

Presumably, the defendant is making a "double-counting" argument. "Impermissible double counting occurs when one part of the [G]uidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the [G]uidelines." *United States v. Watkins*, 667 F.3d 254, 261 (2d Cir. 2012). The prohibition against double-counting is specifically articulated in Guidelines § 3B1.3, which states that, "[t]his adjustment may not be employed if an abuse of trust or skill is included in ***the base offense level or specific offense characteristic***." (Emphasis added.)

Here, the defendant's position of trust is not accounted for in either his base offense level or any other specific characteristic. The base offense level, under Guidelines § 2J1.2, applies to all offenses involving the obstruction of justice. It is the same for any defendant

convicted of an obstruction-related offense, regardless of whether they are a public official (like the defendant) or a private citizen (like the defendant's co-conspirator, Mr. Ferrari).

As for other specific offense characteristics, there are none that apply. Thus, neither the defendant's base offense level nor any specific offense characteristic accounts for the defendant's abuse of his position as a member of the NYSP. Accordingly, there is no double-counting.

Quite the contrary, the absence of any consideration for the defendant's position of public trust in the base offense level or any other specific offense characteristic demonstrates exactly why the two-level enhancement under Guidelines § 3B1.3 needs to be applied. The defendant was in a position of power and public trust and abused that power and trust to his own ends. He *should* receive a more severe punishment than any other defendant who was not in such a trusted position. That is precisely why Guidelines § 3B1.3 exists and applies in situations like this.

The defendant also argues that "[t]he defendant was not the person who derived the information from the confidential source. The defendant was told the information by another New York State Trooper." (Def. Obj., Dkt. 23, p. 1.) The defendant fails to explain what (if any) legal significance this distinction could possibly have. The defendant received confidential information about an ongoing NYSP investigation from another member of the NYSP. He received that information because he was himself a member of the NYSP. He then shared that information with the target of the investigation, who was a personal friend. In doing so, he put the investigation and the safety of the law enforcement officers who were

6

working on that investigation (including an undercover officer who was interacting with the target on a regular basis) at serious risk.  This is precisely the type of conduct that Guidelines § 3B1.3 is designed to cover.  *See, e.g., United States v. Williamson*, 53 F.3d 1500, 1524-25 (10th Cir. 1995) (applying enhancement under § 3B1.3 to a traffic officer who advised a defendant of an upcoming arrest and was subsequently convicted of conspiracy).

Finally, the defendant argues, quoting the text of Guidelines § 3B1.3, that "[i]f this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based **solely on the use of a special skill**, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role)." (Def. Obj. Dkt. 23, p. 2.  (emphasis in original).)

Again this argument is irrelevant.  The enhancement in this case is based on the defendant's abuse of a position of trust, not on his use of a special skill.  So, per the text quoted by the defendant, the enhancement may be applied in addition to an adjustment under § 3B1.1 (Aggravating Role).  However, neither the government nor the PSR has advocated for the application of an enhancement for aggravating role under Guidelines § 3B1.1.  So the final sentence of § 3B1.3 has no application whatsoever to this case.

**CONCLUSION**

Based on the foregoing, the government respectfully requests that the Court overrule the defendant's objection to the PSR and apply the two-level enhancement under Guidelines § 3B1.3.

DATED: Rochester, New York, October 19, 2023.

Respectfully submitted,

TRINI E. ROSS
United States Attorney

BY: _____
MEGHAN K. McGUIRE
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
100 State St., Suite 500
Rochester, NY 14614
Meghan.McGuire@usdoj.gov